Dorukhan Korkut Oguz
OGUZ LAW
1990 N California Blvd., STE 830
Walnut Creek, CA 94596
Ph: (415) 815-3939
dorukhan@oguz.law
Attorney for Plaintiff Salma (Soraya) Jahani

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Salma (Soraya) Jahani | Case No.: |
| Plaintiffs, | |
| v. | **COMPLAINT** |
| Khaled Media LLC and Khaled Saighani (as individual) | |
| Defendants. | [Jury Trial Demanded] |

## **COMPLAINT**

Plaintiff Ms. Salma Jahani ("Plaintiff" or "Ms. Jahani") by its attorneys files this Complaint against Defendants Khaled Media LLC ("Defendant 1" or "Khaled Media LLC") and Khaled Saighani ("Defendant 2" or "Mr. Saighani") (herein collectively referred to as "Defendants") and alleges as follows:

## NATURE OF THE ACTION

1. This is an action concerning the unauthorized use, misrepresentation, and exploitation of Plaintiff Ms. Jahani's copyrighted musical works and likeness by Defendants 1 and 2, Khaled Media LLC and Mr. Saighani, arising from a purported management and music rights agreement executed on March 18, 2021 ("**Agreement**").

2. Plaintiff, an established Afghan artist residing in the United States, entered into this Agreement based on Defendant's assurances that he would assist in registering and protecting Plaintiff's songs, managing her digital content, and ensuring that she received appropriate royalties.

1

3. Instead, Defendant 1 and Defendant 2 engaged in deceptive and unlawful conduct by uploading, altering, and monetizing Plaintiff's songs and videos without her consent; using songs owned by third parties; substituting Plaintiff's original music videos with unapproved images; manipulating Plaintiff's likeness in a manner damaging to her reputation; and withholding any proceeds derived from these exploitations.

4. Despite Plaintiff's repeated written and verbal requests that Defendants cease their conduct, remove unauthorized materials, and account for revenues, Defendants continued to publish and profit from Plaintiff's copyrighted works and image, including after Plaintiff's formal termination of the Agreement in May 2023.

5. Plaintiff brings this action to obtain injunctive relief, damages, and other remedies for Defendants' copyright infringement, breach of contract, fraudulent misrepresentation, unfair business practices, and violation of Plaintiff's right of publicity, in order to prevent further misuse of her artistic works and to restore control over her creative and professional reputation.

## THE PARTIES

6. Plaintiff, Ms. Jahani, is an individual residing at 2707 O Street Apt. 10 Sacramento, CA 95816. Plaintiff is an internationally recognized Afghan vocalist and recording artist, whose musical works, recordings, and performances have been published and distributed both domestically and internationally. Plaintiff is the lawful owner of the copyrights and related intellectual property rights in her original songs, performances, and likeness.

7. Defendant 1, Khaled Media LLC, is a limited liability company duly organized and existing under the laws of state of California and having its principal place of business located at 976 Avaneda Del Vista APT C-06 Corona CA 92882. Defendant 1 conducts business in the entertainment and digital media industries, including through online platforms such as YouTube and social media.

8. Defendant 2, Khaled Saighani, is an individual who is the chief executive officer of Defendant 1, Khaled Media LLC, residing at 976 Avaneda Del Vista APT C-06 Corona CA 92882.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because the claims arise under the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and related federal laws governing intellectual property. The Court also has supplemental jurisdiction over Plaintiff's state law claims, including breach of contract, fraud, and violation of the right of publicity, pursuant to 28 U.S.C. § 1367(a), as these claims are so related to the federal claims that they form part of the same case or controversy.

2

10. Personal jurisdiction over Defendant Khaled Saighana is proper in this Court because Defendant purposefully directed his business activities and wrongful conduct toward the State of California, entered into a written contract with Plaintiff that was negotiated and executed in Sacramento, California, and caused harm and injury in California through his infringing and deceptive conduct, including the publication and distribution of Plaintiff's copyrighted works and likeness accessible throughout California via online platforms.

11. Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within the Eastern District of California, and the harm to Plaintiff's professional reputation and intellectual property occurred in this District through online publication and distribution accessible and directed to California residents.

12. Personal jurisdiction over Defendants is proper because Defendants purposefully directed their activities toward this District, causing foreseeable injury to Plaintiff within the State of California.


**FACTS**

13. Plaintiff, an established Afghan artist residing in the United States, entered into a purported Agreement with Defendant 2. It is brought to this honorable Court's attention that the Defendants have, to this date and despite numerous requests from Plaintiff, not delivered a signed copy of the Agreement to Plaintiff, and that Ms. Jahani is only in possession of the unsigned version of the Agreement.

*(A copy of unsigned Agreement is herein attached as **EXHIBIT A (AGREEMENT)**)*

14. Plaintiff is a world-renowned singer; however, without Plaintiff's consent (as required under the Agreement) or proper authorization, Defendants: (a) uploaded and monetized musical recordings belonging to Plaintiff on YouTube and other online platforms; (b) altered and misrepresented Plaintiff's works by pairing them with inappropriate or unapproved images and video content; (c) used songs for which third parties, including Tuti TV and Tolo TV, held existing rights; (d) failed to remit any royalties or financial proceeds derived from Plaintiff's works; (e) ignored repeated requests to remove or correct unauthorized postings; and (f) continued to publicly disseminate Plaintiff's likeness and artistic works even after receipt of a formal notice of Agreement termination in May 2023.

15. Specifically and to address these violations, Plaintiff retained an attorney and delivered a 'Notice of Contract Termination and Legal Action for Copyright Infringement and Misrepresentation' dated March 7, 2025. In the said notice and on grounds of copyright infringement, fraudulent misrepresentation, and unconscionability of Agreement, the Plaintiff terminated the Agreement.

*(A copy of Notice of Contract Termination is herein attached as **EXHIBIT B (TERMINATION NOTICE)**)*

16. Thereafter, to settle the matter amicably, all parties engaged in negotiations, and in response, Plaintiff sent a 'Compromise Settlement and Agreement Between Salma Jahani and Khaled Media

LLC.' Defendants initially responded in a manner that led Plaintiff to believe they were willing to accept the proposed compromise. Acting on that understanding, Plaintiff granted Defendants temporary access to her YouTube account and related digital assets to facilitate the agreed-upon terms. However, immediately after obtaining such access, Defendant 2 reneged on his representations, issued a purported cease-and-desist notice dated August 22, 2025, and declared that he would make no compromises. Defendant then ceased all communication with Plaintiff and unilaterally retained control over Plaintiff's YouTube channel and its contents, thereby leaving Plaintiff with no other option but to exercise her lawful right to pursue legal action against the Defendants in this court of competent jurisdiction.

*(Copies of Compromise and Settlement Agreement and Cease and Desist Notice are herein attached as EXHIBIT C (SETTLEMENT NOTICE) and EXHIBIT D (CEASE & DESIST NOTICE) respectively)*

17. Furthermore, on information and belief, Defendant Khaled Saighana has engaged in a repeated and ongoing pattern of deceptive practices targeting other Afghan artists, particularly elder or vulnerable members of the Afghan music community, by misrepresenting the nature and purpose of agreements in order to gain control over their creative works, social media platforms, and professional archives.

18. Plaintiff is informed and believes, and based thereon alleges, that one such victim was Naim Popal, a well-known Afghan singer in his seventies. According to Mr. Popal, Defendants approached him after a live performance at a park and presented him with what Defendant 2 described as a simple consent form to allow recording or posting of that day's performance. In reality, the document was a full contract purporting to assign or transfer rights over Mr. Popal's entire musical archive and social media presence to Defendants. Mr. Popal informed Plaintiff directly that he later discovered Defendant had used this deceptive contract to take control over his content and online accounts without genuine consent.

19. On information and belief, Defendant 2 employed a similar scheme with another senior Afghan artist, **Ustad Mawash**, also in her seventies. Defendant allegedly took control over her musical works and social media platforms, depriving her of access to her own professional materials and public identity. Plaintiff is informed and believes that Ustad Mawash is currently distressed and seeking assistance to recover her intellectual property and online presence from Defendant's control.

20. These additional instances demonstrate that Defendants' misconduct toward Plaintiff was not an isolated occurrence, but part of a broader pattern of fraudulent and exploitative behavior directed toward respected Afghan artists. Defendant's actions reflect an ongoing scheme to deceive artists into signing misleading contracts and then using those documents to misappropriate control of their creative works, online content, and professional reputations.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement (17 U.S.C. § 501))

### (Against Defendants 1 and 2)

21. The Plaintiff realleges and incorporates by reference its allegations in Paragraphs 1 through 21.

22. Plaintiff is the author and exclusive owner of valid copyrights in a number of original musical works, sound recordings, and audiovisual works (collectively, the "**Works**") that were created and fixed in a tangible medium of expression prior to the acts of infringement alleged herein. Plaintiff has complied in all respects with the Copyright Act of 1976, 17 U.S.C. § 101 et seq., and owns the exclusive rights in and to the Works, including the exclusive rights to reproduce, distribute, prepare derivative works, publicly perform, and publicly display the Works. Plaintiff's exclusive ownership of copyrighted Works is also provided in Section 3 of the Agreement.

23. Although the Agreement granted exclusive digital rights to Defendants 1 and 2 in order to promote Plaintiff's musical works, the Agreement required Defendants to obtain Plaintiff's prior approval for any publication, and Plaintiff subsequently provided Defendant 2 with specific lists of songs, initially 53 works, followed by additional lists totaling 95 works, identifying the particular songs that Defendants were permitted to publish.

24. However, Defendants willfully exceeded the scope of the license granted to them under the Agreement by uploading and publicly distributing musical works that were never authorized or included in the lists provided by Plaintiff. These unauthorized works included, among others, songs over which third parties such as Tuti TV and Tolo TV held exclusive rights, as well as recordings that were not part of any list approved by Plaintiff.

25. Defendants' unauthorized publication of these additional works constituted acts of direct infringement under 17 U.S.C. § 501. Each unauthorized upload or posting of a non-approved work constitutes a distinct act of infringement.

26. Defendant also used Plaintiff's name and likeness in connection with the unauthorized postings to falsely suggest that such works were sanctioned by Plaintiff, thereby further compounding the infringement by associating her identity with material she did not authorize and could not control.

27. Plaintiff contends that the infringing conduct was willful and knowing. Defendants had actual knowledge that his license extended only to the specific songs expressly approved by Plaintiff and nonetheless uploaded unapproved and third-party works, disregarding both the limitations of the Agreement and Plaintiff's repeated written objections.

28. As a direct and proximate result of Defendant's infringement, Plaintiff has suffered, and continues to suffer, irreparable harm, including loss of control over her copyrighted works, dilution of her artistic reputation, interference with existing and prospective business relationships, and loss of potential licensing revenue.

29. Plaintiff is entitled to all remedies available under the Copyright Act, including but not limited to: (a) injunctive relief pursuant to 17 U.S.C. § 502; (b) impoundment and destruction of infringing copies under 17 U.S.C. § 503; (c) recovery of actual damages and Defendant's profits or, at Plaintiff's election, statutory damages under 17 U.S.C. § 504; and (d) recovery of costs and attorneys' fees under 17 U.S.C. § 505.

30. Defendant's ongoing refusal to remove the infringing materials despite Plaintiff's repeated demands demonstrates willful disregard for Plaintiff's exclusive rights and entitles Plaintiff to enhanced statutory damages for willful infringement.

**SECOND CLAIM FOR RELIEF**

**(Breach of Contract)**

**(Against Defendants 1 and 2)**

31. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

32. The Agreement signed between Plaintiff and Defendants expressly provided that: (a) Defendants **shall not edit, alter, or modify** any musical, visual, or audiovisual content belonging to Plaintiff without her **prior written approval**; and (b) Defendants **shall not upload, post, or publish** any content that is **libelous, defamatory, or damaging** to Plaintiff's personal or professional reputation. Plaintiff, in reliance upon Defendant's representations, signed the Agreement in good faith and provided Defendants with lists of songs and photographs that were authorized for use and distribution pursuant to the terms of the Agreement.

33. On the other hand, Defendants materially breached the Agreement by, among other acts: (a) editing, altering, and replacing Plaintiff's original video content with unrelated or inappropriate images without approval; (b) creating and posting manipulated or caricatured depictions of Plaintiff and her late husband that were disrespectful and professionally damaging; (c) publishing unapproved or defamatory material that misrepresented Plaintiff's artistic identity and brand; (d) removing original authorized videos from YouTube and substituting them with static images or altered versions; (e) failing to account for or remit any royalties, revenues, or advertising proceeds derived from Plaintiff's works; and (f) continuing to upload or retain Plaintiff's content on public platforms even after the **Agreement was formally terminated by written notice in May 2023**.

34. Defendant's conduct constitutes a material breach of the express terms of the Agreement and a violation of the implied covenant of good faith and fair dealing inherent in every contract under California law.

35. As a direct and proximate result of Defendant's breaches, Plaintiff has suffered substantial damages, including but not limited to: (a) loss of artistic integrity and creative control over her works; (b) reputational harm within the Afghan and international music communities; (c) emotional distress and humiliation resulting from the public dissemination of altered and defamatory content; and (d) financial losses resulting from Defendant's failure to properly register, promote, and account for Plaintiff's songs.

36. Plaintiff has fully performed all obligations required of her under the Agreement or has been excused from performance by Defendant's breaches.

37. Defendant's breaches were willful, deliberate, and undertaken with reckless disregard for the contractual rights and dignity of Plaintiff, thereby entitling Plaintiff to an award of compensatory damages, consequential damages, and, where appropriate, punitive damages for willful misconduct.

38. Plaintiff further seeks equitable relief, including rescission of the Agreement, an accounting of all revenues derived from her works, and an injunction prohibiting Defendants from further use, alteration, or dissemination of any of Plaintiff's copyrighted material, likeness, or name.

## THIRD CLAIM FOR RELIEF

### (Fraudulent Misrepresentation)

### (Against Defendants 1 and 2)

39. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

40. Beginning in or about December 2020 and continuing thereafter, Defendants made multiple material misrepresentations of fact to Plaintiff for the purpose of inducing her to enter into a contractual relationship with Khaled Media LLC and to entrust it with control over her musical works and related content.

41. Specifically, Defendants falsely represented to Plaintiff that: (a) he was a legitimate music promoter and industry professional with the expertise and resources to register and protect Plaintiff's songs on her behalf; (b) he would ensure that Plaintiff's rights were safeguarded and that she would receive royalties and compensation for the use of her songs on digital platforms; (c) he would act solely in Plaintiff's best interests, ensuring her works were properly credited and that no one would take advantage of her creative output; and (d) he would not alter, misuse, or publish Plaintiff's works or likeness without her prior approval.

42. At the time these representations were made, Defendants knew them to be false and misleading. Defendants had no genuine intention of protecting Plaintiff's rights or ensuring payment of royalties; instead, his objective was to obtain control of Plaintiff's artistic catalog and likeness for his own commercial gain.

43. Plaintiff, who is of old age, having limited familiarity with the English language and the legal and technical processes of copyright registration, **reasonably relied** upon Defendant's representations. Plaintiff believed Defendant's assurances that he would act in her best interests and signed the Agreement based on that reliance. Plaintiff's reliance on Defendant's false representations was justifiable and foreseeable, as Defendant cultivated trust and goodwill by repeatedly invoking his professional credentials, cultural affinity, and alleged mission to "help elder Afghan artists."

44. After obtaining Plaintiff's signature and access to her songs, Defendant's conduct demonstrated the falsity of his representations. He: (a) uploaded songs not authorized by Plaintiff; (b) used third-party materials without permission, exposing Plaintiff to potential legal liability; (c) altered Plaintiff's

original works and replaced approved videos with unapproved or distorted visuals; (d) posted caricatured or disrespectful depictions of Plaintiff and her late husband; and (e) failed to provide any accounting or payment for revenues generated through YouTube and other digital platforms. Defendant's fraudulent misrepresentations were made willfully, maliciously, and with intent to deceive and defraud Plaintiff.

45. As a direct and proximate result of Defendant's fraudulent conduct, Plaintiff has suffered damages including, but not limited to: (a) loss of control and integrity over her artistic works; (b) reputational harm within the music industry and her professional community; (c) emotional distress, humiliation, and mental anguish; and (d) financial losses arising from the unauthorized exploitation of her works and Defendant's failure to remit revenues.

46. Defendant's conduct was oppressive, fraudulent, and malicious within the meaning of **California Civil Code § 3294**, entitling Plaintiff to an award of **punitive and exemplary damages** in addition to compensatory damages, to punish and deter similar misconduct.

47. Plaintiff further seeks rescission of the Agreement as having been procured through fraud, restitution of any benefits conferred upon Defendants, and all other equitable relief the Court deems appropriate.

## FOURTH CLAIM FOR RELIEF

### (Violation of Right of Publicity and Misappropriate of Likeness)

### (Against Defendants 1 and 2)

48. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

49. Plaintiff **Salma Jahani** is a well-known Afghan vocalist and recording artist whose name, image, likeness, and persona have substantial commercial and artistic value. Plaintiff's reputation and public identity are integral to her professional career, particularly in connection with the performance, marketing, and distribution of her musical works.

50. Defendants 1 and 2, without the knowledge, consent, or authorization of Plaintiff, used Plaintiff's **name, image, likeness, and identity** for their own commercial purposes, including but not limited to: (a) publishing and promoting Plaintiff's photographs, songs, and videos on YouTube and other online platforms; (b) pairing Plaintiff's name and image with unapproved or unrelated songs; (c) manipulating or altering Plaintiff's photographs, including creating caricatured depictions of Plaintiff and her late husband that were disrespectful and humiliating; and (d) using Plaintiff's likeness to advertise, promote, and monetize digital channels and social media content for Defendant's personal financial benefit.

51. Defendant's conduct constitutes a **knowing and willful use** of Plaintiff's likeness within the meaning of **California Civil Code § 3344(a)**. Defendant received or expected to receive direct

financial gain through the monetization and promotion of YouTube channels and other online content associated with Plaintiff's name and image.

52. Plaintiff never granted Defendant permission, express or implied, to use her likeness in any form other than as specifically authorized under the written Agreement, and expressly conditioned all such altered use on her prior approval of the content. Defendant's use of Plaintiff's likeness in a false, altered, or defamatory context was done **without consent** and against Plaintiff's explicit written instructions, and served no legitimate artistic or journalistic purpose.

53. Defendant's conduct caused Plaintiff to suffer **severe emotional distress, reputational damage, and professional harm**, as well as **economic injury** resulting from the loss of control over the commercial use of her image and identity.

54. Defendant's unauthorized use and manipulation of Plaintiff's likeness has created confusion among viewers and fans as to whether Plaintiff approved or endorsed such content, thereby damaging her goodwill and standing within the Afghan and international music communities.

55. Defendant's acts were intentional, willful, and malicious within the meaning of California Civil Code § 3344(a), entitling Plaintiff to recover the greater of actual damages or statutory damages of $750 per violation, as well as Defendant's profits attributable to the unauthorized use.

56. Pursuant to California Civil Code § 3344(a), Plaintiff is entitled to recover: (a) actual damages sustained as a result of Defendant's unlawful conduct; (b) all profits derived from the unauthorized use of her name, image, and likeness; (c) punitive and exemplary damages to punish and deter such conduct; and (d) attorneys' fees and costs incurred in bringing this action.

57. Plaintiff further seeks **injunctive relief** restraining Defendant, his agents, and any persons acting in concert with him from using, reproducing, altering, publishing, or displaying Plaintiff's name, image, likeness, or any derivative thereof without her express written consent.


**FIFTH CLAIM FOR RELIEF**

**(FINANCIAL AND PSYCHOLOGICAL ELDERLY ABUSE)**

**(California Welfare & Institutions Code §§ 15610.30 and 15610.07)**

**(Against Defendant 2)**

58. Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

59. Plaintiff is informed and believes, and based thereon alleges, that Defendant Khaled Saighana has engaged in a pattern of conduct constituting financial and psychological abuse of elder individuals, in violation of the California Elder Abuse and Dependent Adult Civil Protection Act (EADACPA), California Welfare & Institutions Code §§ 15610 et seq.

60. The statute defines "financial abuse" of an elder as occurring when a person "takes, secretes, appropriates, obtains, or retains real or personal property of an elder for a wrongful use or with intent to defraud, or both," or "assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder" (Cal. Welf. & Inst. Code § 15610.30).

61. On information and belief, Defendant knowingly targeted elder Afghan artists, including but not limited to Naim Popal and Ustad Mawash, both in their seventies, by exploiting their trust and limited understanding of contractual and technological matters. Defendant misrepresented the nature of the documents he presented to them, causing them to sign agreements that wrongfully transferred or gave Defendant control over their music, social media accounts, and professional archives.

62. Defendant used similar deceptive methods against Plaintiff and others as part of an ongoing scheme to take control of creative assets belonging to vulnerable and elderly members of the Afghan artistic community. Defendant's acts were deliberate, malicious, and intended to obtain valuable intellectual property, social media accounts, and royalty revenue streams under false pretenses.

63. Defendant's actions caused financial abuse by wrongfully obtaining control over valuable property and income-producing assets of elderly artists, and psychological abuse by causing distress, humiliation, and reputational harm to those individuals, including Plaintiff, who witnessed the exploitation of her peers.

64. Defendant's conduct was willful, oppressive, and carried out with intent to defraud, deceive, and exploit elder victims who trusted him as a cultural promoter and advocate.

65. As a direct and proximate result of Defendant's financial and psychological elder abuse, Plaintiff and similarly situated elder artists have suffered and continue to suffer substantial emotional distress, loss of property, loss of professional control, and damage to their mental and physical well-being.

66. Pursuant to California Welfare & Institutions Code § 15657.5, Plaintiff is entitled to recover: (a) compensatory damages for all economic and noneconomic losses suffered; (b) attorneys' fees and costs; and (c) punitive damages due to Defendant's recklessness, oppression, fraud, and malice in exploiting elderly victims.

67. Plaintiff further seeks injunctive relief to prevent Defendant 2 from continuing to contact, solicit, or otherwise exploit elderly artists under the guise of professional representation, and to compel Defendant 2 to relinquish any property, accounts, or intellectual materials wrongfully obtained from such individuals.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter a judgment against Defendants, granting Plaintiff the following relief:

1. **Permanent Injunction.** Enjoin Defendants, their agents, employees, representatives, affiliates, and all persons acting in concert or participation with him from: (a) publishing, distributing, reproducing,

10

altering, monetizing, or otherwise exploiting any of Plaintiff's copyrighted musical works, videos, or images without her express written authorization; (b) using Plaintiff's name, image, or likeness for any commercial purpose; and (c) making or disseminating any false, misleading, defamatory, or unauthorized materials concerning Plaintiff or her works.

2.  **Rescission and Nullification of Contract.** Declare the purported Agreement between Plaintiff and Defendants **null, void, and of no legal effect**, and order that Defendants relinquish all rights, access, and control related to Plaintiff's musical works, accounts, and intellectual property derived therefrom.

3.  **Damages for Copyright Infringement.** Award Plaintiff actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages for willful infringement pursuant to **17 U.S.C. § 504**, together with prejudgment and post-judgment interest as allowed by law.

4.  **Compensatory and Consequential Damages.** Award Plaintiff compensatory damages in an amount to be determined at trial for Defendants' breaches of contract, fraudulent misrepresentations, and violations of Plaintiff's rights, including loss of income, reputational injury, and damage to Plaintiff's professional standing.

5.  **Emotional Distress and Reputational Harm.** Award Plaintiff damages for **emotional distress, humiliation, and mental anguish** resulting from Defendants' wrongful acts, including the publication of altered, defamatory, or disrespectful depictions of Plaintiff and her late husband.

6.  **Restitution and Accounting.** Order Defendants to provide a full accounting of all revenues, royalties, and profits derived from Plaintiff's musical works, likeness, or related content, and to **disgorge all sums unjustly obtained** through his unauthorized conduct.

7.  **Punitive and Exemplary Damages.** Award Plaintiff **punitive and exemplary damages** under **California Civil Code § 3294** and **§ 3344(a)** to punish Defendants' willful, malicious, and fraudulent misconduct and to deter similar conduct in the future.

8.  **Attorneys' Fees and Costs.** Award Plaintiff her **reasonable attorneys' fees, litigation expenses, and court costs** incurred in prosecuting this action pursuant to **17 U.S.C. § 505, California Civil Code § 3344(a)**, and any other applicable law.

9.  **Prejudgment and Post-Judgment Interest.** Award Plaintiff interest on all monetary awards as permitted by law from the earliest date allowed by law.

10. **Further Relief.** Grant such other and further relief as the Court deems just, proper, and equitable, including but not limited to such additional damages, declaratory relief, or equitable remedies necessary to restore Plaintiff's control over her creative works and protect her personal and professional integrity.

**DEMAND FOR TRIAL BY JURY**

Plaintiff demands a trial by jury on all issues that are so triable.

Dated: November, 17, 2025

Respectfully submitted,


*//ss//Dorukhan Korkut Oguz*
Dorukhan Korkut Oguz – Bar No. 331895
Oguz Law
Address: 990 N. California, 8th Floor, Walnut
Creek, CA 94596
Telephone: 415-815-3939
dorukhan@oguz.law
Attorney(s) for Plaintiff

**EXHIBIT A [AGREEMENT]**

CONTENT LICENSE AGREEMENT

This Agreement is made as of Thursday 18th March 2021 by and between the Licensor and the Licensee listed below, and comprises Special Terms and General Terms, and describes the Parties' understanding regarding Licensee's authorized use of content owned and distributed by Licensor (the "Agreement"). If there is a conflict between the Special Terms and the General Terms, the Special Terms will prevail.By signing this Agreement,  the Licensor (as defined in the Special Terms) agrees to be bound by and be subject to the Special Terms and  General Terms of this Agreement, provided that said Agreement shall only become effective as of the date the  Licensor adds its channel(s) or social media page(s) to Licensee's dashboard (the "Effective Date").

SPECIAL TERMS

Licensor: Name: _____Know as Salma Jahani

Address: _____

Contact: _____Email: _____

+

Licensee: Name: Khaled Media LLC.

Address: 976 avaneda del vista APT C-06 Corona CA

Contact: Khaled Saighani

Kablul :Tel.: +93782919072 USA Cellphone 1-949 610 3818

 Email: Khaled1saighani@gmail.com : Youtube@KhaledskProduction.com

Content:Territory: Worldwide

Format(s): AVOD, SVOD, TVOD, RBT and any other formats used by digital platforms.Means all audio, visual and audiovisual content proprietary to the Licensor or in respect of which the Licensor has the rights to exploit in the manner contemplated by this Agreement. Content includes already existing content and/or any other content Licensor will produce within the term of this Agreement.

Term: (20) years from Effective Date. Auto renewable for a similar period of time unless communicated otherwise by either Party ninety (90) days prior to the end of the Term. Party/Parties The Licensor and the Licensee are referred to each as a "Party" and both as "Parties""

Things We Do

1. Find you trendy subjects to produce videos 2. Write interesting titles and descriptions ashtag and cros promotion on our youtube channels for your videos 3. Optimizing your channel and videos to increase reach by user search 4. Desiging cover , Tambnail and materials for your channel and videos Social Media Youtube oficial Artest Veryfication

Platform(s): • YouTube • Instagram • Vuclip• iTunes • Dailymotion • snapchat • baidu • Twitter • TikTok• Spotify • Periscope • Yahoo • Anghami • TV/Cable/Radio • Facebook • Loops •Games • YouNow and ETC

and any other broadcast/satellite channels, and digital platforms -playback and/or livestream- work on any internet connected electronic devices.

Commercial Use: All types of goods (Merchandise).

Grant of Rights During the Term, Licensor grants to the Licensee, in the Territory, exclusive digital rights such as but not limited to the exclusive right to digital exploit, broadcast, display, distribute, synchronize, integrate the Content into the Platforms, publicly perform the Content in the Territory, in the Format(s), and on the Platforms, and non-exclusive rights to negotiate and sign on behalf of the Licensor all agreements, proposals and any document related thereto as well as carry on the Services.

Royalties Revenue Source Licensee Talent YouTube revenue (through adSense) 50% 50% (other platforms and advertisers/sponsorships) Royalties From Other Platform other then youtbe all other platform will 50% licensor 50% License

Royalty Accounting Periods The Licensor's share shall be paid following the payment of Khaled Media Share and Royalties due thereto, on a monthly basis on the 10th day of every month only if the Licensor's share reaches the Minimum Revenue. First payment after 60 days following the signing date of this agreement.

Licensee Services Optimization on the channel and current contents Dedicated account manager to help and update the list of trendy subjects Protect content dispute submition Short deep link service for channels and videos

Licensor's Bank Account into which payments are to be made: Payments to be made in USD directly to the Licensor:

Bank Name: _____

Bank Address: _____

Bank Account Holder Name: _____

Bank Account No:_____

Swift Code: _____

General terms

Definitions . In this agreement, all capitalized words and expression's shall have the following meanings : Agreement . Means this platform service agreement comprised of section 1 ( Deal Tearms ) section ll

( General conditions ) and, to the extent applicable, any supplemental conditions, Applicable law . Means any (a) Federal law , decree , Resolution or regulation ; (b) statute , Statutory instrument , Bylaw , Order directive, treaty decree or law ( including any judgment, demand, order or decision of any court , regulator or tribunal ) (c) rule, policy, guidance or recommendation issued the need governmental  statutory, Free zone or regulatory body, And/or (e) binding Industry code of conduct or guidelines,  Which relate to this agreement or the provision of this service . Channels : means an individual  account on the platform which allows for the posting of content on that platform for public display,

Content management system : means any system are set of producer provided by platform operators to enable content owners and/or the provider of multi channel network service to monetize track and monitor content and to engage and content protection tols. Deductions: means cost deducted from gross revenue as set out and clause (6.3) and any supplementary costs set out in the special terms (if any), Effective date : shall have the meaning set forth in the special terms. (Gross revenue) Shell mean as set out and Clause 6.2.2 (Group revenue ): manes khaledmedia and it's parents of any tier , subsidiaries of any tier , subsidiaries of its parents of any tier , assigns, transferees , Representative, agent , officers , Directors and attorneys . The terms 'parent' and subsidiary shall refer to any relationship where are the 'parent' entity directly or indirectly owns 50% or more off the share capital of the subsidiary entity , Or has 50% share or more of the voting power I would be entitled to 50% or more of the income or capital value of the subsidiary entity on a distribution are winding up, or otherwise has the power ( whether direct or indirect ) to direct or cause the direction of its affairs whether by Exercising contractual powers or otherwise.

Intellectual property rights : shall mean any and all patents , trademarks, trade names, service Marks, Copyright, moral rights , performance right , Rights in design , Rights and databases, knowhow, Software, IT, confidential information and all or any other intellect or industrial property rights whether or not register it are capable of registration and weather subsisting in the united state of America or any other part of the world together with all or any Goodwill well relating there to . Licensee : shall have the meaning ascribed to such Term the in special terms, .: licensor : shall have the meaning ascribed to search term and special terms. : Minimum revenue means $250 US dollars /:: Net revenue : shall means as set out and clause 6.4. : platforms : means platforms set out and especial terms plus any other multimedia on demand platform agreed from time to time. /// terms : shall mean the period commencing on the effective date and ending on the date this agreement terminates or expire or set out under the special terms,

2- Grant of rights : 2.1 during the term, license grants to the Licensee exclusive digital rights such as but not limited to the exclusive right to digital exploit, broadcast, display, Distribute, synchronize and integrate The content and to the platform and publicly perform the content and the church three, and the formats and on the platforms as well as the right to commercially exploit the goods and merchandise of the Licensor and carry on the service stated stated under clause 5 Herein . The term TV/cable/radio , within the platforms section under special terms, if available, Include any appearance of the Licensor and/our use of its name and/our face and/our corrector and/our logo and/or any expressions or icons Or any of it's personal matters, on all visual and audiovisual , Media, networks And television stations ( terrestrial , satellite and digital ) And radio station (wireless and digital) On

any program, advertisement or any broadcast of any kind without limitation, whether paid are free of charge licensee shall have all the exploitation right in the regard under this agreement and the revenue arising therefrom shall be included in the gross revenue, the term, games, in the platforms section under special terms, if available includes any appearance of the licensor and/our use of its name and or face and or any character and/or logo and/or any expressions are icons are any of us personal matter whether paid are free of charge on programmed And none programed games

And applications of any kind, and without limitation, on mobiles, computer, any other devices or on the Internet, which are used for personal and/or commercial use . Licensee shall have all the exploitation  rights In this regard under this agreement and the Revenue arising arising thereof shall be included in  the gross revenue the term merchandise and the commercial use section under the special terms if  available,

Include all goods And merchandise which include the name of the Licensor and/or is face and/or it's corrector and/or it's Logo and/or any expressions or icons Or any of it's personal matters , which are distributed free of charge or are sold in the market and/or online , licensee shall have all the exploitation rights and regard under this agreement and the revenue arising thereof i'll be included and the gross revenue

3- ownership :

Licensor owns all intellect and proprietary rights and goodwill inthe content

 4-: warranties : 4.1 - : each party warrants that it is free to enter into this agreement and as the right and capability to fully perform its obligation hereunder

4.2- licensee warrants that : (a) The content will not be displayed in connection with content or advertising which is sexually suggestive or Explicit, obscene, defamatory , libelous , slanderous , or otherwise, unlawful, and ( b ) licensee well, as applicable, pay all necessary dues to collecting societies for making available the content for retransmissions.

4.3- licensee makes no warranties other than those expressly stated in this agreement In no event well licensee reliable for Ani and direct, special, incidental, consequential or exemplary damage or expenses arising in connection with this agreement even if licensee is advised of the possibility of such damages.

Set up and optimization : 5.1- The Licensor exclusively appoints the Licensee to provide the following service ( services ) for the Licensor from the effective date for the term of this agreement.

5.1.1 optimization service: technical and strategic advice on optimization (a) Channel layout and design and (b) content metadata, for The purposes of making the channel more appealing and increasing the performance of the content in searches on the platform respectively.

 5.1.2- Promoting marketing and monetization service : The booking of advertisement and solicitation of user subscriptions by licensee on the Licensor's channel (channels ) on the platform for the purpose of increasing gross revenue. The Licensor acknowledges that revenue arising from bookings made by the platform operator independently of licensee ( such survives are taken up by advertisers, further

Tearms will apply ) license he has the exclusive right, at it sole s discretion, To provide all other form of promoting, marketing and monetizing the licensors content on the platform as maybe developed in Future, including the use of the name and/or face of the Licensor in games

5.1.3- copyright management service :

Claiming content on the platform using the tools provided by the platform for licensee, For the purpose of identifying and either monetizing tracking, blocking, or taking down content which violates the  content claim it on behalf of the licensor, and Accordance with the Licensor's profile.

4.1.4- distribution service: distributing content in all formats and to all platforms.

5.2. The Licensor shall assign licensee as channel admin and will provide licensee with relevant details for each of their channels on each platform and give licensee exclusive access to any content management system the Licensor operate on the platform

5.3. The Licensor shall not upload content prohibited under any applicable laws or pursuant do I need terms of use Or Community guidelines of the relevant platform , And in particular shall ensure no content (a) violates The intellectual property rights of any third-party, (b) is Pornographic or standing or obscene , (c) involves image of violence or child abuse, (d)harms The report Tatian or standing or (e) is professionally embarrassing to licensee in any applicable jurisdiction, or otherwise violates the standards of public decency . Age-appropriate content will be clearly designated as such.

5.4 - The Licensor Aprovees to add licensees logo and thread name to the homepage, About page and either of each channel and in the end cards of all content, and licensee shall have the right to make such technical modifications to content to the extent the licensor fails to comply with the requirement of this clause .

6- Licensee will not otherwise cat, edit, alter Or change The content without the prior consent of the licensor . For the evidence of doubt , The licensee shall have the right to optimize the content without getting prior approval from licensor if said optimization is required to perform the service under this agreement.

Payment to licensor The licensor acknowledges that licensee does not operate the platform and is not responsible for the platforms Iavailability, or Any technical faults with the platform which prevent advertisement being placed. The licensor agrees that licensee shall collect and shall be entitled to collect all revenue granted trough : Advertising on the content on the platform , including revenue due directly from advertisers sourced by licensee and revenue due from the platform operator and respect of advertisements the platform operator has sourced and booked in respect of the content ; Paid subscription from user ms in respect of the content, subject to any deduction made by the platforms in respect of any share agreed by licensee with the platform operator,

(Gross revenue) and the licensor agrees not to seek to collect any gross revenue and to the extent it receives any Gross Revenue it will inform licensee promptly and transfer such sums to the licensee.Gross revenue shall be subject to such deductions as may be agreed between the parties and the following standard deductions ( together hereinafter referred to as deductions ) Payments to

platform operator in respect of advertisement or deduction imposed by platform operator ;

Applicable taxes The net Sum each calendar month ( pro-rated for part months ) Remaining from all gross revenue collected by licensee after all deduction ( Net revenue ) shall be apportioned by the parties and the proportion's set out and the especial terms on the 10 = day of the subsequent calendar month , provided that in the event that they share of the licensor out of the net revenue does not exceed the minimum revenue , The payments of such share shall be postponed it to the subsequent month(s) until the aggregate unpaid share off the licensor reach the minimum revenue in any subsequent months subject to reaching the minimum revenue the first payment to the licensor if any, shall be made after two months have lapsed from the effective date of this agreement . Neither party well, and will not authorize or encourage any third-party to, directly or indirectly grant queries , Impressions of or clicks on any adds or otherwise obtain access to content through automated, deceptive , Fraudulent or other invalid means, including But not limited to trough repeat it manual clicks, The use of robots or other automated query tools and/or Computer granted search request, and/or the Fraudulent use of other search engine optimization service and/or software, and no gross revenues will be granted as a result of such means.

Content management and intellectual property The licensor warrants that : It owns and/or has demonstrable exclusive rights to exploit in the manner contemplated by this agreement, All intellectual property rights In all Content, and that no other party is joint owner or has any form of intellectual  property rights and such content, All content loaded on the platform shall be capable of being viewed  by users without any interruption due to any third-party having any intellectual property rights in the  content . Licensor acknowledge that the licensee cannot prevent user from violating the copyrights  and other property rights of the licensor and that licensee is not responsible for the infringement Acts  of user, 7.1.3 The licensor has not had any copyright strike our blocks on the platform due to actual or  alleged infringement of any third-party's intellectual property rights ( other than disclose it to licensee  prior to effective date ) and has never had any channel blocked or terminated for spamming or other  breach of any platforms Terms of use or community guidelines,

And the Licensor indemnifies Licensee And it's group and their respective officers, partners, directors, employees, agents, successors, and a sign firm and assign any and all loses, claims, damages, liabilities, expenses ( including, without limitation, fees and disbursements of legal counsel and expenses of litigation ) Or other obligations arising form or connected to any breach off the Licensor's warranties and this clues. 7.2 - where applicable, licensee shall claim all the content uploaded to the Licensor channels link it to the content management system provided by the platform for licensee ( partner – uploaded content) licensee shall determine to use the platforms content management system to apply the usage and match policies appropriate for such partner that uploaded content. 7.3- where applicable , licensee shall take a step to identify and claim all content within the platforms content management system which is responsibly identifiable via licensee as being honored by the Licensor utilizing any automatic content ID system supported by the platform and/are responsible manual search contacted from time to time by licensee ( user – generated content) licensee shall determine to use the platforms content management system to apply the usage policy for such a user granted content the license shall provide all necessary information and responsible Assistance were required by licensee for such purposes . 7.4- if the policy applied by licensee on the partner – uploaded content

Or  the user- Generated content is challenged by a third-party on the platforms content management system ( violator) licensee shall continue to pursue it's claimed that the violators is infringing the licensor intellectual property rights and the claimant content until all procedures relating to infringement of intellectual property rights and the platforms content management system ( Violation procedures ) are exhausted , however, under no circumstances Well licensee be obligate to take action against violators outside of the violation procedures of the relevant platform including without limitation taking action and code or any other form or participating and I need dispute resolution process involving the licensor and the violator which is outside of the violation procedures . 7.5- The Licensor provides a non-exclusive, Sublicenable , White white, royalty free license to licensee : 7.5.1 all intellectual property rights in The Licensor's content permitting licensee to, enter alia , host , cache , route , transmit, copy modify ( to the extend permitted by this agreement ) , Distribute, display, reformat , excerpt , And store such content; and 7.5.2 - Any trademarks or brand signifiers employed by the Licensor in respect of such content, permitting licensee to enter Alia , Produce marketing materials and promotions including such trademarks and brands signifiers ,In each case for the purpose of licensee fulfilling it's obligation and exercising it's right under this agreement and/or for the purpose  of promoting the content for licensors Appalachian to licensees multi channel network any good well  occurring to sach intellectual property Right shall belong to the Licensee or Licensor represent and  undertakes That it has not,During the term of this agreement, make any agreement and respect of or  license out of the Licensor content which is inconsistent with or otherwise undermines licensees  Rights and obligation under this agreement 8- liability and indemnity 8.1 - save as expressly set out and this agreement license a excludes any warranties and conditions, whether employed Bylaw are  otherwise, from this agreement to the extent permitted in law . 8.2. Nothing in this agreement shall  operate to exclude or restrict licensee liability ( if any ) to the Licensor for death or personal injury  resulting from negligence , For froth or for any matter for which it is not permitted by law for licensee  to exclude our limit or attempt to exclude our limit it's liability, 8.3. Subject to clause 8.1 , Licenses shall have no liability to the Licensor for any loss of profit, revenue, goodwell, repetition, opportunity or  date, Or for the loss of any and direct or consequential Los arising out of or in connection with this  agreement, weather and content, tort ( including negligence ) misrepresentation under Statute or  otherwise . 8.4. Subject to calluses 8.1 and 8.2 , Licensees total maximum Aggregate liability in each 12 months period Commencing on the effective date arising out of Or in connection with this agreement,  whether in contract, tort ( including negligence ) Misrepresentation, Under statute or otherwise,  However caused, shall be limited to licenses share of the net revenue ( after recovering advance  payment ) for the 12 months period . If licenses share of net revenue for that 12 months period cannot  be collected accurately at the time relevant liability Is to be assessed ( the applicable time ) ,It shall be  calculated on a prorated basis as X/Z

X Z , where : (a) x= the net Revenue accurate, payed, payable or collected by licensee under this agreement ( after recovering advance payment ) in the relevant 12 months period prior to the applicable time ; ( b) y= The number of days Elapsed in the 12 months period prior to the applicable time : and ( e) z = 365.

8.5 The Licensor shal defined , Indemnify , And hold harmless Licensee and its group and their respective officers, partners, directors, employees, agents, successors, and a sign from an agent (any

and all loses) , Claims, damages, liabilities, expenses ( including, without limitation, fees and disbursement of legal counsel and expenses of litigation ) our other obligations ( collectively ( losses ) and threatened loses to the extent The arise from or in correction with any bridge, Negligence or Other tortious conduct of the licensor, at this employee, agent or subcontractors

Termination and consequence of termination 9.1. The parties may bring this agreement to an end at any time by mutual agreement in writing . 9.2. Each party may terminate this agreement and whole or in part , by immediate write notice to the other If : 92.2. The other becomes insolvent Or bankrupt, make a resolution for its winding up , makes an arrangement or composition with its creditors or makes an application to a court off competent jurisdiction four protection from its creditor Or an administration are winding up Order is made oran administrator or receiver is appointed relation relation to that party, or anything analogues To the foregoing occurs and any relevant jurisdiction, 9.3. Either party May refrain from renewing the initial term or any renew it term by serving a written notice on the other party 90 days prior to the expire of this initial term or any renew term. 9.4. Khaled Media  May terminate this agreement for convenience by providing licensor with 30 days written notice , 9.5.  Upon expiration off the term our earlier termination of this agreement license he will have 30 days to  stop using the content. 9.6. Termination of this agreement pursuant to this section 9 is Without  prejudice to any rights, which either party may have against the other party in law or equity,

General : 10.1, representation : each party represents and warrants that it has the full power and authority to enter into this agreement. 10.2 confidentiality : The recipient of any confidential information will not disclose that confidential information, expect to its employees and/or professional advisors who need to know it and who have agreed in writhing ( or in The case of professional advisor or otherwise bound ) to keep it confidential, the recipient well ensure that itself and those people and entities : (I) use Such confidential information only to exercise Rights and fulfill obligations under this agreement, and (ii) Keep such confidential information confidential, the recipient made disclose confidential information when required by law or by any governmental or regulator body after giving responsible notice to the discloser cool the extent permitted in law, for the purpose of this agreement, confidential information shall mean the term of this agreement and all information disclose it to a party by the other and respect of the business of the disclosing party including any information which is market confidential or which if this disclosed it, will be liable to cause harm to the disclosing party 10.3 subcontracting : Licensee shall have The right to sub-contract any obligations under this agreement to any member of its Group or to a third-party, including without limitation any advertising agency, provided that licensee remains fully liable for all subcontracted obligations.10.4 Force Majeure : The non-performance by Licensee of its obligations hereunder shall be excused , If such non performance is caused by a new strike flood fire strum accident, or other casualty , Act of god , War, civil commotion, act or threat of terrorism , Epidemic , Nuclear, biological, chemical or radiological incident, government distraction or other, failure of equipment or power supplies, or any restrictions or limitations imposed on licensee ( of whatever length ) by the operator of the relevant platform, including without limitation on the laws of right by licensee to provide the service under this agreement or any reduction in the scope of licenses rights and abilities as a provider of multi channel network service licensee shall have no liability to that licensor and connection with any such non

performance, and if such non-performance persists for a period of six months either party will be entitled to terminate this agreement upon prior written notice to the other, 10.5 entire agreement : this agreement sets out all terms agreed between the parties and supersedes all previous agreement between the parties relating to that subject matter and entering into this agreement neither party has relied on , and neither party will have any rights are remedy based on, any statement, representation or warranty( weather made negligently or Innocently ) expect these expressly set out and this agreement, nothing in this clause excludes liability for fraudulent misrepresentation

10.6 variation :This agreement can only be modified by a written agreement signed by persons authorized to sign agreements on behalf of the parties. 10.7 third parties : The parties do not intend that any other term of this agreement shall be enforceable by only person other than the parties . The party is May very or rescind This agreement without the consent of any third-party. 10.8 waiver . Neither party will be treated as having waved any rights By not exercising ( or delaying the exercise of )any rights under this agreement 10.9 severability , if any term ( Or part of a term ) of this agreement is invalid illegal or unforeseeable, the rest of the agreement will continue in force unaffected . 10.10 counterparts: this agreement may be entered into an any number of counterparts ( including electron copies) and taking together these well constitute One document. 10.11 - notices - all noticed under this agreement shall be in writing, in the English language and either delivered by hand or courier or send by email to The relevant party the address or facsimile Number and market for the attention of the individual Detailed In the special Tearms ( or such other addresses, fax number or individual as may be notified By the relevant party to the other from time to time and I called and see what this clause ) any such notice shall be deemed two I've been served at the time of delivery if delivered by on our career, provided that and all cases if I notice is deemed to be served before 9 AM on a business day it shall be deemed to be served at 9 AM on that business day and if it is deemed to be served on a day which is not a business day or half after 5 PM it shall be deemed to be served at 9 AM on the immediately following business day, for the purpose of this Clause , Business days our these which are not Saturday and Sunday Or public holidays and the united state and reference the time of day shall be reference to the time of day at the address of the recipient . 10.12. Language . If this agreement is translated into any other language and if there is a discrepancy In interpretation between the English text and the text of such other language the English text well govern

11 Governing law and dispute resolution 11.1 this agreement, and any non-contractoccult obligation arising out of RN connection with eight will be governed By the law of United state

**EXHIBIT B [TERMINATION NOTICE]**

**EXHIBIT C [SETTLEMENT NOTICE]**

**EXHIBIT D [CEASE & DESIST NOTICE]**